**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LEON DIGGS,**<br>**Plaintiff** | §<br>§<br>§ | |
| | § | **CIVIL ACTION NO. ________________** |
| **v.** | §<br>§<br>§ | |
| **TANGO MANAGEMENT CONSULTING, INC. f/k/a TANGO MANAGEMENT, LLC**<br>**Defendant** | §<br>§<br>§<br>§ | |

Deleted: ,

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW**, Plaintiff, Leon Diggs, (hereinafter "Plaintiff"), and complains of Defendant, Tango Management Consulting, Inc. f/k/a Tango Management Consulting, LLC (hereinafter "Defendant"), and would respectfully show unto the Court as follows:

**I.**

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§1331 and 1343. In addition, Plaintiff invokes this Court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq. (hereinafter "Title VII") and the Family and Medical Leave Act, 29 U.S.C. 2601, et seq.

2. Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## II.

## PARTIES

3. Plaintiff, Leon Diggs, is a black/African American citizen of the United States and a resident of Dallas County, Texas. At all times relevant hereto, Plaintiff has been an employee of Defendant. Plaintiff has been subjected to unlawful employment practices committed in Dallas County, Texas by employees and agents of the Defendant.

4. Defendant is a foreign corporation licensed and registered to do business in Texas. Defendant may be noticed of this lawsuit by serving the registered agent, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

## III.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On May 17, 2020, Plaintiff filed a charge of employment discrimination against Defendant with the Dallas District Office of the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act. Any allegations in this action which pertain to events that occurred after 300 days of the last discriminatory act pertain to allegations of continuing violation.

6. Plaintiff received a "Notice of Right to Sue" concerning the charge by letter on August 20, 2020, entitling him to institute a civil action within 90 days of the date of receipt of said notice. This action is timely filed.

Deleted: er

**IV.**

**FACTS AND CAUSES OF ACTION**

7. This action is authorized and instituted pursuant to Title VII. This is a legal proceeding for legal and/or equitable relief available to secure the rights of the Plaintiff under these statutes.

8. Beginning on or about March 2020, Plaintiff was repeatedly subjected to discrimination based on race, black/African American, gender, male, retaliation, and hostile work environment under Title VII, and unequal pay based on race, black/African American, and gender, male.

9. Plaintiff's educational credentials, certifications and experience are as follows: (1) Bachelor of Science in Business Administration w/Finance Minor; and (2) Certified Training; received A+ Certification, Novell CAN/CNE MSCE & ITIL.

**Deleted:** Bachelor of Science in Finance; and (3)

10. Plaintiff has been employed by Defendant for two (2) years, from April 19, 2018 until present. Plaintiff's starting salary was $125,000 and his current salary is $125,000. Plaintiff is a Project Manager and a Member of the Project Management Institute.

**Deleted:** 0

**Deleted:** as

11. During his tenure, Plaintiff has never received proper performance evaluations from Defendant. Defendant has failed Sox Compliance for not having proper annual reviews for the two (2) years Plaintiff has been there. Plaintiff never received any disciplinary action/reprimand, was never "written up," and was never informed of poor work performance.

**Deleted:** any

**Deleted:** and the

12. Plaintiff Leon Diggs is African American and is employed by Defendant. Throughout his employment, Plaintiff has been subjected to Defendant's pattern or practice of discrimination and company-wide discriminatory policies. Defendant denied Plaintiff resources and teaming and business opportunities, because of his race. Defendant treated Plaintiff worse than similarly-situated employees who are not African American, and Plaintiff lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

Deleted: t

13. On March 27, 2020, Plaintiff informed his project team that he had received news earlier in the week that several members of his family had contracted the COVID-19 virus and were in critical condition. Plaintiff informed Defendant that he would be blocking his calendar for the afternoon and taking the late afternoon off after all administrative duties were complete.

14. Plaintiff's manager reached out to him via messaging and informed him of a last-minute mandatory meeting that he needed to schedule for review discussion. Plaintiff asked to reschedule the meeting due to his family members being hospitalized due to COVID-19. Plaintiff and management agreed to meet on Monday. Plaintiff discovered shortly thereafter that his computer access had been restricted. Plaintiff reached out to Ken Atkinson (IT Rep) and a colleague after 3 p.m. to see if his access truly had been compromised or restricted, and it had in fact been restricted. Plaintiff had been fired. Plaintiff confirmed later that day through one of his colleagues that a mandatory meeting had been received for his project team and informed him that he had been terminated. Plaintiff's worst fears were realized - he had been fired because of the news of his family contracting the virus.

Deleted: Manager

15. Plaintiff had no prior reprimand, no official write-ups or threats of termination. Plaintiff never thought they would terminate him for such a reason. Plaintiff's supervisor, Karthic Gunasekaran, and Mr. Atkinson, never gave Plaintiff an explanation as to why his computer access was restricted or why he had been terminated. Plaintiff tried to contact them both several times with no response.

16. On March 30, 2020, Plaintiff sent a communication to Amit Sharma, Karthic Gunasekaran (Managers 1 and 2) and copied Cynthia Quin (Manager 3), Mark Wise (Director of HR), Zulema Segura (HR Support), Pranav Tyagi (CEO), and subsequently forwarded the message to Brad Biagini (COO), informing them and reminding Karthic Gunasekaran of the no access response from IT and the failure of his managers to reach out to him after informing him of his family's COVID-19 diagnosis. Mr Gunasekaran, Plaintiff's manager, had knowledge of Plaintiff's family's diagnosis of COVID-19, and Mr. Gunasekaran even questioned Plaintiff about whether or not Plaintiff had contracted the virus. Plaintiff's termination was the direct result of Defendant's management team assuming he had contracted the virus. Plaintiff was told by his coworker's that Pavan Kotta (Senior Tango Manager) had reported to others that Plaintiff had been fired by manager Karthic Gunasekaran, even though Plaintiff was never informed by Mr. Gunasekaran or any other manager.

**Deleted:** and

**Deleted:** (Manager 1&2),

**Deleted:** R

**Deleted:** COO and

**Deleted:** he

17. Since Plaintiff's arrival at Defendant's business, there have been many instances of racial and gender discrimination. Race relations alone in the company are very different. The company is 70% Indian, 20% white, 7% Asian and Latin and 2% Black. There have been instances where the CEO and other senior managers berate black/African American employees,

often to the point of humiliation and openly for all to see and hear. Defendant allows coworkers to segregate, especially the Indian male population who constantly disrespect other races.

18. On March 30, 2020, Plaintiff demanded a reason for his termination/restricted access. Defendant's COO (Brad Biagini) sent Plaintiff communication stating that his access should not have been restricted and that the IT Rep should have sent a temporary password, but it did not send properly.

**Deleted:** V
**Deleted:** ds
**Deleted:** (Ken Atkinson)

19. Defendant's actions are in violation of HIPPA and employee confidentiality as well. COO (Brad Biagini) knew about Plaintiff's termination and covered it up and lied about it because of violations perpetrated by others in the organization. Defendant shared Plaintiff's personal and confidential information with those outside of HR without his consent.

**Deleted:** he was in total
**Deleted:** company policy and SOX compliant
**Deleted:** V

20. Defendant maintains strict, centralized control over its wealth management business from its company headquarters, where an all-white team of executives designs and issues mandatory, company-wide policies and practices governing its workforce. These include company-wide policies and practices that govern compensation, teaming opportunities, resources and business opportunities. These practices segregate its workforce, discriminate against black/African American employees, and have a disparate impact on black/African American employees which are not justified by business necessity.

21. Plaintiff suffered unequal pay as the result of his race, black/African American, and/or gender, male. Defendant required Plaintiff to work more than 10-14 hours without pay.

22. Plaintiff suffered retaliation based on his request for time off to care for his family who had COVID-19 and his elderly mother. Plaintiff was singled-out multiple times in front of peers regarding work-related activities for which training had never been provided. Plaintiff was slandered to other colleagues and managers that are not a part of his reporting structure. Plaintiff was demeaned in front of coworkers.

23. In sum, Defendant has and is engaged in an ongoing pattern and practice of race discrimination and knowingly employs company-wide policies and practices that have a disparate impact on black/African American employees. Defendant's systemic discrimination against black/African American employees includes, but is not limited to, the following practices that are both intentionally discriminatory and have an unlawful disparate impact on black/African American employees:

1. Race discrimination
    a. Unfairly disciplining certain employees based on race and/or sex
    b. Using phrases like "you people"
2. Unpaid Overtime
    a. Requiring employees to work more than 10-14 hours without pay
3. Unwarranted disciplinary action
    a. Singled-out multiple times in front of peers regarding work-related activities for which training has never been provided
    b. Slandered and degraded Plaintiff to other colleagues and managers that are not a part of Plaintiff's reporting structure noted in his annual review
4. Personal time-off and company travel violations
    a. Allowing Indian colleagues extensive PTO over US-based employees
    b. Not granting same privileges to black/African American employees and mistreating/retaliating against them when requesting PTO
5. Poor performance review standards (Not SOX Compliant);

Deleted: me

Deleted: my

a. Violating policy by sharing Plaintiff's personal and confidential login information with others and sending communication via unsecured email to Plaintiff, compromising company and client personal information and doing it with "someone" that might be terminated

Deleted: me

b. Failure to promote without cause; and

6. Wrongful Termination

24. The intentional discrimination and disparate impact described above is ongoing and constitutes a continuing violation of the Civil Rights Laws.

25. The racially discriminatory policies and practices of Defendant are uniform and national in scope. Plaintiff was injured by Defendant's unlawful conduct.

26. On information and belief, Defendant followed a policy and practice of retaliation against Plaintiff based on Plaintiff's request for leave to care for his family who were sick due to COVID-19. These retaliatory practices and policies include, but are not limited to, retaliating against employees who make formal request for leave, in violation of the FMLA. Defendant did not grant the same privileges to black/African American employees and allowed segregation within the facility which became discriminatory.

27. On information and belief, Defendant followed a policy and practice of discrimination against Plaintiff because of his race, black/African American, and gender, male, in violation of Title VII. The discriminatory practices and policies include, but are not limited to, discriminating against Plaintiff in the terms, conditions, and privileges of employment based on his race and gender and retaliating against Plaintiff in violation of Title VII. Defendant also allowed Indian colleagues extensive PTO over black/African American employees.

28. Plaintiff was subjected to a hostile work environment and adverse employment actions by Defendant based on Plaintiff's request for leave to care for his family who were sick due to COVID-19.

29. Plaintiff has suffered compensatory damages as the direct result of Defendant's discriminatory and retaliatory treatment of him. Plaintiff would further show that Defendant's conduct was done willfully and with malice and that he is entitled to liquidated and exemplary damages.

30. Defendant's conduct toward Plaintiff caused him severe emotional distress, pain and suffering and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory damages.

31. The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

32. All conditions precedent to the filing of this action have occurred or have been fulfilled.

**V.**

**DAMAGES**

33. Plaintiff seeks statutory damages, back pay and front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to Title VII and the FMLA.

34. Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish and/or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the

past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

**VI.**

**JURY DEMAND**

35. Plaintiff respectfully requests a jury trial.

**VII.**

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear, and, that Plaintiff be awarded judgment against Defendant for statutory damages, compensatory, punitive and general damages, back pay, front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,

IWU & ASSOCIATES

**/s/ Marshay Iwu**
Marshay Iwu
State Bar No. 24083204
400 S. Zang Blvd. Suite 1200
Dallas, Texas 75208
Telephone: (469) 458-3540
Telecopier: (972) 308-6011
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**